USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 07/29/2022

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------
UNITED STATES OF AMERICA,

    -against-

WILLIE SIMS,

                                 Defendant.
---------------------------------------------------------------

No. 19 Cr. 857 (NSR) (01)

OPINION & ORDER

NELSON S. ROMÁN, United States District Judge:

Defendant Willie Sims pled guilty to one count of conspiracy to distribute and possess with intent to distribute 28 grams or more of crack cocaine, in violation of 21 U.S.C. §§ 841(b)(1)(B) and 846. On April 7, 2021, the Court sentenced Defendant to 60 months' incarceration followed by 4 years of supervised release. Defendant's projected release date is January 5, 2024.

On May 3, 2021, Defendant moved *pro se* for compassionate release based on the harsh conditions of confinement resulting from the COVID-19 pandemic, as well as his history of chronic kidney disease, which increases his risk of contraction of or complications from COVID-19. (ECF No. 197.) Defendant subsequently filed supplements to his motion, detailing grievances against the facilities where he has been housed and asking the Court to consider the developing COVID-19 variants. (ECF Nos. 198 & 226.) On September 28, 2021, the Court granted Defendant's request to re-appoint counsel to file a compassionate release motion on his behalf. (ECF No. 221.)

On June 3, 2022, through counsel, Defendant filed the instant motion under 18 U.S.C. § 3582(c)(1)(A), seeking to be resentenced to time served, or alternatively, to reduce his sentence by one year and serve the remaining time under home confinement. ("Motion," ECF No. 258.) The Government opposes Defendant's motion ("Response in Opposition," ECF No. 266.) For the reasons that follow, the Court DENIES Defendant's motion.

**LEGAL STANDARD**

Under 18 U.S.C. § 3582(c)(1)(A), courts may modify or reduce a defendant's term of imprisonment "upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A).

If the exhaustion requirement is met, a court "may [then] reduce the term of imprisonment . . . after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that . . . extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A). While the Sentencing Guidelines provide "that 'extraordinary and compelling' reasons include, the '[m]edical [c]onditon of the [d]efendant' if the defendant is 'suffering from a serious physical or medical condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover,'" *id.* (quoting U.S.S.G. § 1B1.13 App. n.1(A)), courts have significant discretion to determine what constitutes "extraordinary and compelling circumstances," *United States v. Brooker*, 976 F.3d 228, 235–36 (2d Cir. 2020).

As the proponent of release, the defendant bears the burden of proving that "extraordinary and compelling reasons" exist. *See United States v. Butler*, 970 F.2d 1017, 1026 (2d Cir. 1992) ("If the defendant seeks decreased punishment, he or she has the burden of showing that the circumstances warrant that decrease."); *United States v. Ebbers*, No. 02 Cr. 1144 (VEC), 2020 WL 91399, at *4 (S.D.N.Y. Jan. 8, 2020).

**DISCUSSION**

**I. Exhaustion Requirement**

In its response in opposition, the Government expressly waives the exhaustion requirement for Defendant because at the time he filed the instant motion, Defendant was housed in a non-BOP facility. (Resp. in Opp'n at 2); *see also United States v. Barajas*, 18 Cr. 736 (NSR), 2020 WL 3976991, at *8 (S.D.N.Y. July 13, 2020) (noting that courts have deemed the exhaustion requirement waived or excused in cases where the defendant was housed in a non-BOP facility). Accordingly, the Court proceeds to determine the merits of Defendant's motion.

**II. Extraordinary and Compelling Circumstances**

By his motion, Defendant advances four reasons that purportedly rise to the level of extraordinary and compelling circumstances under § 3582(c)(1)(A) that warrant a sentence reduction: (1) the harsh conditions of his confinement; (2) the Eliminating a Quantifiably Unjust Application of the Law Act of 2021 (the "EQUAL Act"); (3) his history of chronic kidney disease; and (4) his reduced likelihood of obtaining the full benefit of the potential sentence reduction from completing the Bureau of Prisons' ("BOP") Residential Drug Abuse Program ("RDAP"). (Mot. at 22–33.) In opposition, the Government argues that none of the reasons Defendant proffers rise to level of "extraordinary and compelling reasons" warranting release under § 3582(c)(1)(A)(i). (Resp. in Opp'n at 3–4.) After due consideration, the Court agrees with the Government.

First, while the Court recognizes that Defendant's history of chronic kidney disease puts him at a higher risk from the COVID-19 virus, *see* Centers for Disease Control and Prevention, *COVID-19 - People with Certain Medical Conditions, Centers for Disease Control and Prevention*, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited July 27, 2022), as of July 28, 2022, the BOP's website

indicates that there are no active cases amongst inmates or staff in the BOP facility where he is housed—FCI Allenwood Medium. *See* Bureau of Prisons, "COVID-19 Update," available at https://www.bop.gov/coronavirus/ (last visited July 28, 2022).

Further, as the Government correctly points out, Defendant's medical records indicate that he has been vaccinated and that he already had COVID-19 without any resulting abnormal kidney function or other complications. *See, e.g.*, *United States v. Jones*, 17 Cr. 214 (CM), 2021 WL 4120622, at *2 (S.D.N.Y. Sept. 9, 2021) (collecting cases denying COVID-based compassionate release to vaccinated defendants). Additionally, none of the medical professionals who have evaluated Defendant has either suggested a more rigorous course of treatment or found any of his lab results troubling. Indeed, Defendant's most recent lab workups from November 2021 and April 2022 indicate that his "glomerular filtration rate"—"the best overall index of kidney function"—actually increased. (*See* Facciponti Decl., Ex. B at 4–7.)

Second, while it acknowledges that COVID-19 has presented difficult conditions of confinement, the Court does not find that those conditions constitute "extraordinary and compelling" reasons warranting a reduction of Defendant's sentence. "[T]he Court acknowledges that in most instances, a person is probably better off at liberty in the community during a pandemic, than incarcerated in a federal prison. That said, these harsher conditions of confinement are not unique to the defendant, *i.e.*, 'extraordinary' for purposes of § 3582(c)." *United States v. Ramirez*, 571 F. Supp. 3d 40, 47 (S.D.N.Y. 2021) (citing *United States v. Bryant*, 2021 WL 738838, at *3 (S.D.N.Y. Feb. 24, 2021) (explaining that the severe conditions of confinement during the pandemic are "not unique to Mr. Bryant and do not militate strongly in favor of finding there are extraordinary and compelling reasons for a sentence reduction")). "If the challenging conditions of confinement caused by the pandemic [standing alone] warranted a sentence reduction

here, [then] essentially every inmate who has been [housed in the same facilities as Defendant] at any time since [October 2019] would be entitled to a sentence reduction." *Id.* at 47.

Third, Defendant's reduced likelihood of participating in RDAP to obtain the full benefit of a potential sentence reduction also does not make his circumstances extraordinary and compelling. RDAP offers federal inmates who successfully complete the program up to a 12-month reduction in sentence. *See* 18 U.S.C. § 3621(e)(2)(B). Because inmates typically need at least 24 months remaining on their sentence to qualify for RDAP, Defendant argues that his lengthy detention at a non-BOP facility due to prior delays[1] threatens his ability to participate in the program, as he has approximately 28 months remaining on his sentence. (Mot. at 16.) In fact, Defendant argues that these 28 months remaining do not even include any good time credit he may earn under 18 U.S.C. § 3624(b), which provides up to 54 days of sentence reduction per year for good behavior, which could also reduce his sentence by nearly a year. (*Id.*)

Hence, Defendant argues that even if he is transferred to a BOP facility immediately, and assuming he immediately starts participating in RDAP (which often has a waiting list), because RDAP takes at least 9 to 12 months to complete, it is very likely that Defendant would not get the benefit of a full 12-month sentence reduction for successful completion of the program. (*Id.*) Had he successfully completed RDAP, received the full amount of sentencing reduction (1 year), as well as the full amount of good time credit (nearly 1 year), Defendant argues that his sentence could be over as early as the fall of 2022—when Defendant could potentially be eligible to be released to a halfway house as early as this summer. (*Id.*)

To begin, however, Defendant's argument relies on speculation and a series of assumptions. While Defendant's ostensive commitment to complete RDAP (*if* admitted) and to

---

[1] The Government represents that as of July 18, 2021, Defendant is now housed at FCI Allenwood Medium.

continue with his good behavior while incarcerated is commendable, it is best not to count any chickens before they hatch. But most importantly, the circumstances of whether Defendant secures a spot in RDAP, and whether he receives any time credit for his good behavior, are both circumstances of general applicability and not specific to Defendant. *See United States v. Robinson*, 17 CR. 124 (PAE), 2022 WL 507445, at *4 (S.D.N.Y. Feb. 18, 2022) (finding that "whether RDAP class sizes due to COVID-19 blocked [defendant] from securing a spot in a class" was a circumstance "of general applicability") (citing *Musa v. United States*, 502 F. Supp. 3d 803, 812 (S.D.N.Y. 2020) (noting that to establish extraordinary and compelling reasons for release due to the pandemic, a defendant must instead adduce "individualized factors justifying his release.") (collecting cases)).

And fourth, the Court is unpersuaded that the potential applicability of the yet-to-be-enacted EQUAL Act could be considered an "extraordinary and compelling" circumstance. Defendant correctly points out that since his incarceration, Congress introduced the EQUAL Act intending to eliminate the sentencing guideline disparities between cocaine base and powder cocaine. *See* EQUAL Act of 2021, H.R. 1693. As drafted, the EQUAL Act permits courts to "impose a reduced sentence after considering the factors set forth in section 3553(a) of title 18, United States Code" to defendants "who, on or before the date of enactment of this Act, [were] sentenced for a Federal offense" involving cocaine base. *Id.* § 2(c)(2)(A).

Two months after Defendant was sentenced here, the Department of Justice fully endorsed the passage of the EQUAL Act before the Senate, noting that the sentencing disparity between crack and powder cocaine undermines public trust and reduces confidence in the justice system's ability to deliver fair and equitable outcomes. *See The Statement of the U.S. Department of Justice Before the Committee on the Judiciary, United States Senate, For a Hearing Entitled: Examining*

*Federal Sentencing For Crack and Power Cocaine*, at 2 (June 22, 2021) ("The disparity in federal cocaine sentencing policy has been the most visible symbol of racial unfairness in the federal justice system for almost 35 years, and it is time to eliminate it.") available at http://cdn.cnn.com/cnn/2021/images/06/22/equal.act.testimony-.final.pdf. In fact, the Government has sought to have judges around the country apply sentencing adjustments consistent with the EQUAL Act—including in the case of one of Defendant's co-defendants. (*See United States v. Ellis*, 19 Cr. 857 (02), ECF No. 242 (Government Sentencing Letter) (S.D.N.Y. Feb. 7, 2022).)

To date, however, Congress has yet to enact the EQUAL Act because while the Act has passed the House of Representatives, it is still currently before the Senate for consideration. Thus, the Court finds that the considering the applicability of the EQUAL Act's proposed adjustments here is premature. *See, e.g.*, *United States v. Roper*, CR12-5085 BHS, 2022 WL 251970, at *3 (W.D. Wash. Jan. 27, 2022) (declining on a § 3582(c)(2) motion to consider whether the potential sentence reduction that would result from the EQUAL Act was warranted because "the legislation has yet to be enacted"); *but see United States v. Samas*, 3:18-CR-00296 (JAM), 2021 WL 5996815, at *2 (D. Conn. Dec. 7, 2021) (considering the EQUAL Act's proposed adjustments when addressing the § 3553(a) factors in a § 3582(c)(1)(A) motion due to the Department of Justice's support of the proposed Act).

The Court recognizes that in *United States v. Brooker*, 976 F.3d 228 (2d Cir. 2020), the Second Circuit held that "the First Step Act freed district courts to consider the full slate of extraordinary and compelling reasons that an imprisoned person might bring before them in motions for compassionate release." *Id.* at 237. "The only statutory limit on what a court may

consider to be extraordinary and compelling is that '[r]ehabilitation . . . alone shall not be considered an extraordinary and compelling reason.'" *Id.* at 237–38 (quoting 28 U.S.C. § 994(t)).

Yet, Defendant fails to provide any persuasive basis as to why the Court should consider the fact that he *may* benefit from a sentence reduction *if, and only if*, the EQUAL Act is enacted as an "extraordinary and compelling" circumstance. At best, Defendant's contentions—namely, that the sentence disparity between him and his co-defendant who the Court sentenced with the EQUAL Act's proposed adjustments with the consent of the Government—seem to suggest that the Court could more appropriately consider such adjustments here when weighing in the § 3553(a) factors. Particularly, the EQUAL Act's proposed adjustments appear most relevant to "the nature and circumstances of the offense," and the needs "to provide just punishment for the offense," "to afford adequate deterrence to criminal conduct," and "to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct," etc. *See* 18 U.S.C. § 3553(a); *see also Samas*, 2021 WL 5996815, at *2–*3.

However, Defendant here asks the Court to put the cart before the horse. Indeed, were it to endorse Defendant's position that the applicability of the yet-to-be enacted EQUAL Act is an "extraordinary and compelling" circumstance, then the Court would be effectively holding that the mere possibility of a defendant receiving a benefit through proposed legislation could warrant compassionate release. Such holding would not only raise slippery slope concerns (*i.e.*, must courts consider proposed legislation at earlier stages of the legislative process as equally extraordinary and compelling as those at a later stage?), but also justiciability concerns (*i.e.*, considering the applicability of legislation not yet enacted). *See Flast v. Cohen*, 392 U.S. 83, 94 (1968) ("The jurisdiction of federal courts is defined and limited by Article III of the Constitution[, and] the judicial power of federal courts is constitutionally restricted to 'cases' and 'controversies.'"). In

short, judges interpret the law as written, not based on their own assessment of likely future legislative action.

To be sure, Defendant correctly states this Court and others have considered and applied the EQUAL Act's proposed adjustments to defendants at sentencings despite Congress having yet to enact the Act. (*See* Resp. in Opp'n at 27.) But Defendant's case is distinguishable from these other cases in two main aspects.

First, unlike in those other cases, the Government here *opposes* applying the EQUAL Act's proposed adjustments to Defendant at this stage. (*Compare* Resp. in Opp'n at 4, *with United States v. Ellis*, 19 Cr. 857 (02), ECF No. 242 (Government Sentencing Letter) (S.D.N.Y. Feb. 7, 2022).) But most notably, courts that considered and applied the EQUAL Act's proposed adjustments did so *at sentencing*, and not after Court had already issued of a judgment of conviction of the defendant that includes a sentence—as is the case here. Specifically, the Court sentenced Defendant on April 7, 2021—nearly a month after the EQUAL Act was introduced in the House of Representatives (March 9, 2021) and nearly three months before the Department of Justice offered its full endorsement of the Act (June 22, 2021).

At sentencing, "[a] district court, of course, has authority to vary downward in light of the statutory sentencing factors of 18 U.S.C. § 3553(a) and on grounds of the court's reasoned policy disagreement with the application of the Sentencing Guidelines." *United States v. Stuck*, 419 F. Supp. 3d 373, 380 (D. Conn. 2019) (citing *United States v. Algahaim*, 842 F.3d 796, 800 (2d Cir. 2016); *United States v. Bonilla*, 618 F.3d 102, 110 (2d Cir. 2010)). But once issued "a judgment of conviction that includes a sentence constitutes a final judgment for all other purposes." 18 U.S.C. § 3582(b). Only "Congress . . . has the power to fix the sentence for a federal crime, and the scope of judicial discretion with respect to a sentence is subject to congressional control."

*United States v. Martin*, 974 F.3d 124, 135 (2d Cir. 2020) (quoting *Mistretta v. United States*, 488 U.S. 361, 3645 (1989)).

In other words, "other than the limited exceptions provided by statutes, the Sentencing Commission, and the Federal Rules of Criminal Procedure, courts are not free to modify sentences at will." *Martin*, 974 F.3d at 135. Even more so in cases such as this one, in which the basis for the Court's modification of an already imposed sentence does not even consist of an error in the Defendant's original sentencing, but instead, consists of a potential benefit derived from proposed legislation that Congress has yet to enact. *See, e.g.*, *United States v. Lopez*, 523 F. Supp. 3d 432, 438 (S.D.N.Y. 2021) ("There is a strong federal interest in the finality of judgments and most errors in an original sentencing are not likely to qualify as an extraordinary and compelling reason for a sentence reduction."). In fact, the Court is only aware of one court considering the EQUAL Act's proposed adjustments in a § 3582(c)(1)(A) motion, but that court did so when weighing in the § 3553(a) factors *only after* the defendant had established the existence of other independent "extraordinary and compelling" circumstances warranting relief. *See Samas*, 2021 WL 5996815, at *2–*3 (finding that sentence reduction of unvaccinated, obese 50-year-old defendant suffering from hypertension and cerebrovascular disease, and who previously had a stroke and then aphasia, was warranted).

That said, if (and when) Congress enacts the EQUAL Act *as drafted*,[2] then may Defendant move for a sentence reduction based on the Act's adjustments. *See, e.g.*, 18 U.S.C. § 3582(c)(1)(B)

---

[2] *See* EQUAL Act of 2021, H.R. 1693 § 2(c)(2)(A) ("In the case of a defendant who, on or before the date of enactment of this Act, was sentenced for a Federal offense described in subparagraph (B), the sentencing court may, on motion of the defendant, the Bureau of Prisons, the attorney for the Government, or on its own motion, impose a reduced sentence after considering the factors set forth in section 3553(a) of title 18, United States Code.").

10

("[T]he court may modify an imposed term of imprisonment to the extent otherwise expressly permitted by statute or by Rule 35 of the Federal Rules of Criminal Procedure[.]").

In sum, "[u]nder the circumstances, the Court concludes that Defendant has failed to establish extraordinary and compelling reasons justifying a sentence reduction. Accordingly, it need not and does not address the § 3553(a) factors." *United States v. Laboy*, 511 F. Supp. 3d 436, 438 (W.D.N.Y. 2021).

## CONCLUSION

For the foregoing reasons, Defendant's motion for compassionate release under 18 U.S.C. § 3582(c)(1)(A) is DENIED. The Clerk of Court is directed to terminate the motions at ECF Nos. 226, 257 & 263.

Dated: July 29, 2022
      White Plains, NY

SO ORDERED:

_____
NELSON S. ROMÁN
United States District Judge